# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

MARCH TERM, 1902.

———————

CAMDEN IRON WORKS, complainant,

*v.*

THE CITY OF CAMDEN, GEORGE PFEIFFER, JR., et al., defendants.

———

GEORGE PFEIFFER, JR., appellant,

*v.*

THE CAMDEN IRON WORKS, respondent.

———

THE CAMDEN IRON WORKS, appellant,

*v.*

GEORGE PFEIFFER, JR., respondent.

[Filed June 16th, 1902.]

1. Actions to foreclose a lien under a notice filed with the proper city officer upon the moneys in the control of a city due or to grow due to a contractor under a contract with the city for the making of any public

723

improvement, being made cognizable in equity, he who seeks equity must do equity; he must come into court with clean hands.

2. His claim must be made in *good faith* and must not contain any known and conscious demand beyond the actual amount' due, or omit, knowingly and consciously, any credit or offset to which the contractor is entitled.

3. Knowingly and consciously making an untrue and excessive claim will defeat the right to a lien under the statute. Where it appears upon the face of the claim or by proof that a claim is untrue or excessive, the court must be satisfied that the erroneous part of the claim was made in good faith, or the lien will fail.

On appeals from a decree advised by Vice-Chancellor Reed, whose opinion is reported in *15 Dick. Ch. Rep. 211.*

On June 24th, 1896, George Pfeiffer, Jr., entered into an agreement with the city of Camden, a municipal corporation, for extending and improving its water-supply. A supplemental agreement between the parties was added November 7th, 1896. Pfeiffer was to receive $561,500 for all his work. Pfeiffer claims to have completed the work.

The Camden Iron Works, the complainants, entered into contract to furnish a part of the material with which Pfeiffer performed his contract with the city. There were two contracts between Pfeiffer and the Camden Iron Works, both dated October 31st, 1896. One for straight pipe and special castings, the other for a stand-pipe of thirty feet diameter and one hundred and ten feet in height.

On May 18th, 1898, the Camden Iron Works gave two notices, in writing, to the proper officials of the city of Camden; one recited that there was owing to them from Pfeiffer $32,228.45 in accordance with the particulars of such demand attached to the notice. That $18,891.18 of the claim was then due, and $13,337.27 would be due upon the acceptance by the city of the work done by Pfeiffer for the city under his contract.

The other notice was for $2,558.08, being the amount claimed to be owing by Pfeiffer for the balance on the stand-pipe contract, with interest thereon.

The bill of particulars attached to the two notices were respectively as follows, being numbered "No. 1" and "No. 2" for convenience:

Camden Iron Works *v.* Camden.

No. 1 for $32,228.45.

CAMDEN, New Jersey, May 18th, 1898.

GEORGE PFEIFFER, JR.,

*To* CAMDEN IRON WORKS, *Dr.*

| | | |
|---|---|---|
| Special castings shipped to date, 36,754 lbs., at 2¼ cents per lb... | $826 96 | |
| 6″, 12″, 16″, 20″ pipe shipped to date, 11,431 lbs., at $22.50—2,000 lbs... | 128 60 | |
| 30″ pipe shipped to date, 2,860,583 lbs., at $22.50—2,240 lbs......... | 27,635 28 | |
| 36″ pipe shipped to date, 2,344,961 lbs., at $22.50—2,000 lbs......... | 26,380 81 | |
| | $54,971 65 | |
| Less payment on ac...... $10,841 96 25,465 59 | | |
| | 36,307 65 | |
| | | $18,664 10 |
| Pipe made and held subject to order: | | |
| 225 pcs. 30″ pipe, 975,398 lbs., at $21.64—2,240 lbs. ............... | $9,423 04 | |
| 34 pcs. 36″ pipe, 203,703 lbs., at $22.50—2,000 lbs............... | 2,291 66 | |
| | 11,714 70 | |
| Interest on $42,507.12, from Feb. 20th, 1897, to May 18th, 1898, 1 yr., 2 mos., 28 days............. | $3,173 86 | |
| Less interest on $25,465.59, from July 6th, 1897, to May 18th, 1898, | 1,324 21 | |
| | 1,849 65 | |
| | $32,228 45 | |

No. 2 for $5,558.08.

CAMDEN, New Jersey, May 18th, 1898.

GEORGE PFEIFFER, JR.,

*To* CAMDEN IRON WORKS, *Dr.*

| | | |
|---|---|---|
| Stand-pipe, as per contract........ | $9,000 00 | |
| Less payment on account.... $2,400 " " " " .... 4,160 | | |
| | 6,560 00 | |
| | | $2,440 00 |
| Interest on $4,800, March 20th, 1897, to May 18th, 1898, 1 yr., 1 mo., 28 days........................ | $334 40 | |
| Less interest on $4,160, July 6th, 1897, to May 18th, 1898, 10 mos., 12 days........................ | 216 32 | |
| | 118 08 | |
| | $2,558 08 | |

Both claims were duly verified as required by statute.

At the time these notices were filed there was due, or about to become due, Pfeiffer from the city, under his contract, $120,000.

These notices stopped, therefore, $34,786.53 of this sum so due Pfeiffer.

The decree of the chancellor, advised by Vice-Chancellor Reed, decrees that there is due the complainant on notice No. 1, $14,499.49, and on notice No. 2, $2,509.39, making a total of claim allowed under both notices of $17,020.88 only.

And. it was further decreed that, for that amount, "George Pfeiffer, Jr., was, on May 18th, 1898, the date of the filing of the complainant's lien claims in this cause, and still is indebted to the complainant upon its said claims, for which it is entitled to, and has a lien upon, the said moneys due from the said city of Camden to the said George Pfeiffer, Jr."

From this decree there are cross-appeals. One by the Camden Iron Works against so much of the decree as disallowed a large part of its lien claim, and the other by George Pfeiffer, Jr., from the allowance of any lien in favor of the Camden Iron Works upon the funds due him by the city of Camden, under his contract, on either of said lien claim notices.

*Mr. Edward A. Armstrong* and *Mr. David J. Pancoast,* for the Camden Iron Works.

*Mr. Samuel H. Grey,* for George Pfeiffer, Jr.

The opinion of the court was delivered by

FORT, J.

The bill in this case was filed to foreclose two lien claims against funds due by the city of Camden to George Pfeiffer, Jr., its contractor upon certain public improvements for the extension of the city water-supply.

The right to file the lien claim is founded upon an act entitled "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this

state," approved March 30th, 1892. The method of serving the notices and the like provided for by the statute was duly pursued. *Gen. Stat. p. 2078.*

It has been decided by this court that suits to foreclose a lien given by this statute must be in the court of chancery. *Delafield Construction Co.* v. *Sayre, 31 Vr. 449.*

In disposing of these appeals, I shall first consider the appeal of George Pfeiffer, Jr. His appeal is founded upon the theory that the decree of the chancellor is erroneous, because it allows a part of the claim of the complainant, under the $32,228.45 notice, when he should have decreed, because of the wilfully excessive, false and fraudulent character of a large part of that claim, in favor of the appellant and against the right of the complainant to any lien claim whatever for any part of said claim. By the statute approved March 30th, 1892, above recited, and under which the complainant's lien claims are filed, it is enacted that any "laborer, mechanic, merchant or trader," who shall perform any labor or furnish any material toward the performance or completion of any city contract, shall have a lien for the value of such labor or materials upon moneys in the control of said city, due or to grow due to the contractor with said city, for any public improvement,

"to the full value of such claim or demand, and these liens may be filed and become an absolute lien to the full and par value of all such work and materials to the extent of the amount due or to grow due under said contract, in favor of every person or persons who shall be employed or furnish materials to the person or persons with whom the said contract with said city, town, township or other municipality is made or the subcontractor of said person or persons, their assigns or legal representatives."

In order to secure the benefit of this statute, it is enacted that it shall be necessary for every lien claimant to comply with the second section of the act, which provides as follows:

"That at any time before the whole work to be performed by the contractor for any such city, town, township or other municipality, is completed or accepted by said city, town, township or other municipality, and within fifteen days after the same is so completed or accepted, any claimant may file with the chairman or head of the department, council, board, bureau or commission having charge of said work, and with the financial

officer of said city, town, township or other municipality, notices stating the residence of the claimant, verified by his oath or affirmation, stating the amount claimed, from whom due, and, if not due, when it will be due, giving the amount of the demand after deducting all just credits and offsets, with the name of the person by whom employed or to whom the materials were furnished; also a statement of the terms, time given, conditions of his contract, and also that the labor was performed or materials were furnished to the said contractor, and were actually performed or used in the execution and completion of the said contract with said city, town, township or other municipality; but no variance as to name of the contractor shall affect the validity of the said claim or lien."

It will be noted that the claim of the claimant must be

"verified by his oath or affirmation stating the amount claimed, from whom due, and, if not due, when it will be due, giving the amount of the demand, after deducting all just credits and offsets."

And it is further provided that the claim shall state

"that the labor was performed or materials were furnished to the said contractor and were actually performed or used in the execution and completion of said contract with said city."

The requirements of the statute therefore are an accurate, verified account, with a statement thereon of all just credits and offsets. Good faith in the claim and accuracy in its statement are made the foundation of its right to be enforced against moneys due a contractor from a city. The statute does not declare that if wilful or fraudulent misstatements are knowingly made in the account, it shall be non-enforceable or void. Neither does the statute declare that innocent mistake or honest error shall not avoid the right to enforce the lien.

In the states having statutes giving lien claims, either on buildings or vessels or on funds in the hands of municipalities due to contractors, the statutes seem to provide that, in order to avoid a lien because of error or mistake, it shall be necessary to show that it was a wilful and fraudulent one, knowingly made.

These provisions of the statute are remedial, and were enacted to protect the claimant in cases of innocent mistake, for the reason that, without such a provision of the statute, where a verified claim was required, and the claim was also required by

the statute to be "just and true" or "actually due," and to show thereon "all just credits and offsets," it was held by the courts that an unjust or inaccurate claim, made carelessly or without proper caution, would not be enforced as a lien.

The State of Massachusetts has two lien acts. They are found in the public statutes of 1882 as chapters 191 and 192. By section 14 of chapter 192, a lien is given upon vessels constructed or repaired in any port, for labor done thereon or materials furnished therefor. The fifteenth section requires that the lien shall be filed by the claimant, within four days after the vessel departs from the port where the debt was contracted, in the office of the clerk of the city or town within which the vessel was at the time the work was done, containing

"a statement subscribed and sworn to by him or by some person in his behalf, giving a just and true account of the demand claimed to be due to him with all just credits," &c.

In procedure, the provisions of chapter 191 of the Building Lien act is made applicable to chapter 192 of the Vessel act, and section 8 of chapter 191 provides that

"the validity of the lien shall not be affected by any inaccuracy * * * in stating the amount due for labor or materials, unless it appears that the person filing the statement has wilfully and knowingly claimed more than is his due."

This remedial section was adopted by the legislature of Massachusetts in 1855, and was enacted to prevent the defeat of a claim as a lien which contained any inaccuracy in the statement, when not wilfully and knowingly made. Prior to the act of 1855, the statute under which liens were filed, even for building contracts in that state, simply contained the clause that the claimant must file "a certificate containing a just and true account of the demand justly due to him after all just credits given." Under that clause, the supreme court of Massachusetts held that an error, though honestly made, in omitting a credit on a lien claim of $4 only avoided the entire right to the lien, because it was not a just and true statement. The court said:

Camden Iron Works *v.* Camden.

"The amount of all just credits is a fact which lay particularly within the petitioner's own knowledge and which he was bound to state properly; if the owner of the land had paid the amount thus stated, he would have lost $4 in settling with his contractor." *Lynch* v. *Cronan,* *6 Gray 531; Truesdell* v. *Gay, 13 Gray 311.*

Subsequently, in 1856, after the statute of 1855 had been passed, the supreme court of Massachusetts held that, because of the act of 1855, and since that act, the erroneous inclusion honestly made in a lien claim of labor done upon a building, but not due to the claimants, would not defeat the lien. They put it expressly upon the remedial statute of 1855. *Parker* v. *Bell, 7 Gray 429; Hubbard* v. *Brown, 8 Allen 590.*

The same condition of statute now exists in the State of New York, with regard to liens, as that which existed in the State of Massachusetts prior to 1855. There is no provision in the New York statute that a mistake innocently or carelessly made shall not affect the lien, nor is there any act which provides that only wilful and fraudulent misstatements shall avoid the lien. The court of appeals of New York has not passed upon the question whether an inaccurate, untrue, excessive or oppressive claim will defeat a lien or whether an innocent mistake made in the amount claimed, or the credits given, will defeat the lien, but the supreme court and other courts of New York have passed upon this question, and uniformly held that an inaccurate, untrue, excessive or oppressive claim, when filed, will defeat the claimant's right to a lien. The court of appeals, in *Ringle* v. *Wallis Iron Works,* has considered all these questions and recognized the fact that the supreme court and the general term thereof, in New York, have held such claims to be void, but the majority of the court said that it was unnecessary to decide that question in that case. Judge Gray, however, in his dissenting opinion, even in that case, said: "That because the notice of lien failed to comply with the requirements of the statute and contained untruthful statements as to the material facts, no valid lien was created which plaintiffs could enforce." In the majority opinion, Judge O'Brien says: "This court has

not yet been committed, so far as I have been able to ascertain, to the doctrine that a party, by inserting statements of fact in the notice of lien which are shown to be untrue, thereby forfeits the right to a lien and renders the notice void or ineffectual to create a lien. Cases have been cited from the supreme court and other courts in support of this proposition. We will not now stop to inquire whether this qualification has been properly ingrafted upon the statute, and, if so, to what limitations such a rule should be subjected. It is quite clear that the cases refer to statements in the notices that are not only untrue but wilfully and intentionally false in some important or material respect."

Further on in the opinion, speaking of the facts in that case, he says: "Nor is there anything in the record to warrant the inference that the plaintiffs knowingly and consciously inserted any false statements in the notice, and nothing less than that, even upon the view of the court below, will be sufficient to defeat the lien." *Ringle* v. *Wallis Iron Works, 149 N. Y. 439.*

It will be noted that, notwithstanding the New York statute contains no provision as to wilful and fraudulent statements in a lien claim, the courts of that state, in all cases upon which they have passed, have held that the provision of their statute which requires a true and just statement of the claim will defeat the right to a lien where the plaintiffs knowingly and consciously insert any false statement in the notice.

The language of our statute in the case before us requires that the claim shall be verified, stating the amount claimed; that there shall be a deduction of all just credits and offsets, and an affirmation that the labor was performed or the materials were furnished and "were *actually performed or used* in the execution or completion of the said contract with said city." This statute clearly requires an honest and truthful statement of the claim for labor performed or material furnished in the execution of the contract, and, in order to make the accuracy of the statement quite essential, the statute provides that the verification shall be that the work was actually performed or the material actually used in the execution or completion of the contract.

The statute is not broad enough to cover materials not actually used in the construction of the city work. The reason for this must be quite obvious.

The swearing to an erroneous claim thoughtlessly and carelessly, without any effort to obtain accessible *data* from which the error might be corrected, is swearing wilfully and knowingly. *Gibbs* v. *Hanchette, 90 Mich. 657.*

In the statement of a fact which could have been avoided by reasonable diligence, the lien is lost. *Nicolai* v. *Van Fridagh, 23 Oreg. 149.*

A material misstatement in a claim, if made fraudulently, or, what is about the same thing, made wilfully and knowingly, violates the lien altogether; but, by statute in some states and by judicial construction in others, an error which is innocently made, and which does not mislead anyone to his prejudice, does not render the lien void, but, at most, merely renders it void as far as the erroneous item is concerned. In states where this rule prevails a lien may be enforced for the amount actually due, even though the claim, through innocent mistake, exaggerates the total debt. *Boisot Mech. L.* § *425.*

When the law requires "a certificate containing a just and true account of the demand justly due to him, after all just credits given," to be filed, the omission of a credit dissolved the lien. *Phil. Mech. L.* § *356; Lynch* v. *Cronan, supra.*

The amount of a claim should be accurately given, where the amount is required to be stated, so that the owner may, if he desires, discharge the lien by depositing "the amount claimed" without thereby having to deposit more than the just amount. *Hoyt Mech. L. 140.*

Even under the Massachusetts statute, where it is required that the claimant shall wilfully and knowingly claim more than is due in his certificate to defeat his lien, the courts have held that, if the claimant knowingly omits a credit given in his statement of account filed in the clerk's office, the jury will be authorized to consider this fact and to draw from it the inference that he wilfully and knowingly claimed more than was due. *Corbett* v. *Greenlaw, 117 Mass. 167.*

The most liberal rule as to the defeat of a lien because it

contains non-lienable items is that which allows inquiry to be made as to whether the non-lienable items were inserted in the claim in good faith. *Title Guarantee Co.* v. *Wren, 76 Am. St. Rep. 454, 460, note.*

The citations herein made, and a careful examination of many others, including all the text-books on the subject that I have been able to find, seem to make it clear that the rule applicable to the right of the claimant in this case to a lien upon the funds of the city of Camden due to Pfeiffer, the contractor, is that, if the account as filed is not the amount of the demand which is truly and substantially due to the claimant, after deducting all just credits and setoffs, but is knowingly and consciously excessive and untrue, it will not be enforced as a lien. It needs to be remembered that these proceedings for the enforcement of liens under this statute are made cognizable in equity, and that the principles of equity are applicable to one who comes into court to foreclose a lien of this character. He who seeks equity must do equity, and he who comes into equity must come with clean hands.

If the standard established by the New York court of appeals, in *Ringle* v. *Wallis Iron Works, supra,* be set up to measure the right of the claimant in this case to a lien, we think that the facts before us would not justify us in sustaining it. They declare the rule to be, where there is no statute fixing it, that if a claimant knowingly and consciously inserts any false statement in the notice, it will be sufficient to defeat the lien.

It would be difficult to examine the facts in this case and reach any conclusion which would relieve the claimant from the imputation of filing with the city of Camden an inaccurate, untrue, excessive and oppressive claim under the terms of its contract with Pfeiffer. It is self-evident that the claimant charged, in excess of the amount fixed by the contract upon the straight pipes shipped under it to Pfeiffer, $3,746.56. It is equally clear that, under the plain letter of the same contract, the whole charge of $11,714.70 in the claim which makes up the $32,228.45 was absolutely without any basis of right. A careful examination of the testimony fails to disclose a single statement in the evi-

dence of the president of the Camden Iron Works, or by any other witness called on its part, in explanation or in justification of either the excessive charge of $3,746.56 or the wholly improper inclusion of the $11,714.70 in the claim. The letter of Pfeiffer to the Camden Iron Works of February 10th, 1897, shows that the impropriety and wholly baseless character of such a claim was brought to the attention of the claimant, in great detail, over four months before the claimant filed with the clerk of the city of Camden its inaccurate, untrue, excessive and oppressive claim. It is an irresistible conclusion that it filed this lien notice against both light and knowledge. The letters in evidence, the testimony of the president of the company, the whole course of conduct of the claimant company in relation to garnisheeing other funds of Pfeiffer in a trust company in Philadelphia after, or at the time of, the filing of its lien notices with the city of Camden, is so flagrantly unfair, unjust and oppressive as to give the irresistible inference that the act of the claimant company, in filing its lien for an untrue and excessive amount, was knowingly and consciously done. It is not even pretended that it had legal advice that its lien notice, as filed, contained claims which it might justly make under its contract with Pfeiffer.

This finding, therefore, leads to the conclusion that the decree of the chancellor, in so far as it allowed the sum of $14,499.49 upon the lien claim for $32,228.45, or any part of that claim, was erroneous, and should be reversed.

So much of the decree as allows $2,509.39 upon the second claim filed, which relates to the stand-pipe, ordered and delivered under another contract, should be affirmed. These two claims must be treated and considered separately. Each could have been dealt with by the contractor and the city as independent and substantive. The filing of the one in no way hindered or delayed the adjustment of the other. The error found in the second claim, as filed, for $2,558.08, amounting to $48.69, under the proof in the case, was, quite evidently, not a known and conscious mistake of the claimant, but arose out of an agreement to credit, made between the contractor, Pfeiffer, and an employe

of the claimant company, and might have been, and undoubtedly was, honestly and innocently omitted in crediting. The finding of the vice-chancellor in that respect is affirmed.

The conclusion reached as to each of the claims before us, and the principles governing us in arriving at the result, we believe to be in accord with the views expressed by Chief-Justice Beasley in relation to claims by notice, given to an owner, under the third section of the Mechanics' Lien law. "It is reasonable," he says, "to require the materialman or workman to be certain that the claim he makes is, in all respects, correct before he proceeds to impound moneys in the hands of the owner and to interrupt the due execution of the building contract. A privilege to make exorbitant and ill-founded claims, and, on refusal of payment, to intercept such sums and hold them in the hands of the owner an indefinite time, could be simply an instrument of vexation and oppression. The statute says the workman or materialman shall give notice of the contractor's refusal to make payment, 'and of the amount due to him or them and so demanded,' and it proceeds to authorize the owner thereupon to retain 'the amount so due and claimed,' obviously, then, the amount demanded must be the amount due. As the amount claimed is to be retained by the owner, it would be sheer injustice to allow more to be claimed than is justly due. If the workman or materialman claims, therefore, more than has, in fact, been earned by him, such exaggeration is, I think, fatal to his right to use the statutory procedure against the owner." *Reeve* v. *Elmendorf,* 9 *Vr. 125, 132.*

The decree will therefore be reversed and modified.

The appeal of George Pfeiffer, Jr., will be sustained to the extent of eliminating from the lien the $14,419.49 allowed by the decree of the chancellor on claim No. 1 for $32,228.45, and the whole of that lien claim will be disallowed. The decree, so far as it allows $2,509.39 on the second lien notice, is approved, with interest from the date of the filing of the lien, viz., May 18th, 1898. The refusal to allow interest, we think, is erroneous. The claim being just, interest should follow. Both parties are entitled to costs on their respective appeals.

On appeal of the Camden Iron Works—

*For reversal and modification*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, ADAMS, VREDENBURGH, VOORHEES, VROOM —13.

*For affirmance*—None.

On appeal of George Pfeiffer, Jr.—

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, ADAMS, VREDENBURGH, VOORHEES, VROOM—13.

*For affirmance*—None.