GLOUCESTER TURNPIKE COMPANY

*v.*

AMERICAN PIPE COMPANY et al.

[Decided July 29th, 1910.]

1. Under the powers conferred by the general act concerning water companies (2 *Gen. Stat. p. 2202*), a water company in the lawful exercise of its rights is authorized to locate its pipes in a public highway operated as a turnpike, without the consent and against the will of the turnpike company.

2. For the purpose of preliminary relief it must be considered that such water company is also empowered by the legislature under this statute to lay its pipes in highways without the necessity of a precedent municipal consent, provided the pipes are laid in the manner stated in the statute.

3. A consolidated water company is within the provisions of this statute.

4. On an application for preliminary relief in a court of first instance, the constitutionality of a statute may be assumed.

5. The title to this statute embraces townships in its enumeration of "cities, towns and villages."

On bill, &c., for injunction.

*Mr. William T. Read* and *Mr. Samuel H. Richards,* for the complainant.

*Messrs. Gaskill & Gaskill,* for the defendants.

LEAMING, V. C.

Complainant is a turnpike company and seeks to enjoin defendant water company from laying its water pipes in the road operated by complainant as a turnpike. Defendant water company claims the right to locate its pipes in the road without the consent and against the will of the turnpike company.

Complainant was created by a special act of the legislature, approved March 5th, 1850. Prior to that time the road in question was a common highway. The act of incorporation authorized complainant to construct a turnpike road, at least thirty-two feet in breadth, along the middle, as nearly as possible, of the then highway, and cast upon the company various burdens, including the burden of maintenance, and imposed various penalties for its failure to discharge its duties, and also conferred various privileges in connection with the construction and operation of the turnpike road, including the privilege of collecting certain tolls for its use by the public. The act also provided that it should not take effect until the highway upon which the turnpike was authorized to be located and made should be vacated as a public highway. The highway was vacated in April, 1850, and since that time has been maintained and operated by complainant as a turnpike or toll road.

In the light of *Wright* v. *Carter, 27 N. J. Law (3 Dutch.) 76*, and *Borough of Chambersburg* v. *Manko, 39 N. J. Law (10 Vr.) 496*, there can be little doubt touching the relation of a turnpike company to its road and to the public, and its right to secure from the courts adequate protection against unlawful occupancy or use of its road by others. The corporate act of the turnpike company in the case first cited was in many respects similar to the corporate act of complainant. The act contemplated the vacation of the highway before the turnpike company should occupy it, and, like the corporate act of complainant, provided that compensation should be made by the turnpike company for all damages which the owners of the land over which the road passed should sustain by reason of the construction of the road, and also for all damages done to adjoining lands, and all materials taken therefrom; but made no provision for compensation for the value of the soil occupied by the road. It was there held that the title to the soil was not changed, but remained, as it was before, in the owner of the adjoining soil; that the vacation of the road could not be regarded as an adjudication that it was not longer necessary as a highway, in view of the obvious legislative plan of merely transferring the burden of maintenance from the public to the turnpike company; and that the easement or right

of way which existed before the passage of the act and before the vacation of the highway continued thereafter. In the latter case it is shown that the local authorities having charge of highways may maintain ejectment or procure relief in equity against any person unlawfully encroaching upon them, and that this arises from and is dependent upon the fact that the duties of the local authorities in regard to streets are such as require a right of exclusive possession; it is also there shown that where the charter of a turnpike company imposes the duty of constructing and keeping in repair a turnpike, and a highway is vacated pursuant to a legislative plan to transfer the duty of maintaining the road from the public to the corporation, the right of possession which had existed in the public authorities only because it was charged with the duty of maintenance, and which was a mere adjunct of the duty, passed with the obligations from the public authorities to the turnpike company. The *locus in quo* is, therefore, a public highway over which the public are entitled to travel, subject only to the obligation to pay toll. In view of the principles thus defined there can be no doubt of the right of complainant to equitable relief against a defendant who unlawfully enters upon a turnpike and destroys the surface thereof; for such acts are clearly destructive of a proper performance of the duty which the law has cast upon complainant.

But there can be no doubt of the power of the legislature to authorize a water company to lay its water pipes in highways. If defendant company is in the lawful exercise of such a legislative right, no relief can be afforded to complainant.

Section 12 of the act under which defendant claims its corporate existence and rights (*2 Gen. Stat. p. 2202*) provides that water companies incorporated under that act are thereby

"authorized and empowered to lay their pipes beneath such public roads, streets, avenues and alleys, as they may deem necessary * * * free from all charge to be made from any person or persons, or body politic whatsoever, for said privilege, and also such hydrants at the crossings or intersections of said streets and alleys; provided, that the said pipes shall be laid at least three feet below the surface of the same, and shall not in anywise unnecessarily obstruct or interfere with the public travel, or damage public or private property; and provided, that the consent shall be obtained of the corporate authorities, if any there be, of the town through which the same may be laid."

It is clear that the legislature has here conferred upon water companies the right to lay its pipes in public highways without consent of others except so far as the latter proviso of the act may be held to require municipal consent; and I also think it entirely clear that the turnpike road of complainant is a public highway within the meaning of this section, for, as already stated, the road now in question is an ancient highway which has been merely delivered to the turnpike company for purposes of maintenance and control, and the public rights to traverse that highway have been unchanged except to the extent of the burden of toll. But it is urged in behalf of complainant that the legislative authorization also contemplates a precedent municipal consent. In *Atlantic City Water Co.* v. *Consumers Water Co., 44 N. J. Eq. (17 Stew.) 427, 432,* this section was construed contrary to the present contention of complainant. It is there held that the proviso must be understood merely to compel the water company to submit to such local regulation in the use of the streets, while putting down its pipes, as should be necessary to prevent all improper or unnecessary interference with public travel, and to render the water company's occupation of the streets as little inconvenient to the public as possible. The view is there taken that a corporation, formed under that statute, acquires, by force of the statute itself, the moment it becomes a body politic and corporate, a franchise, investing it with power to lay its pipes in the public ways, and that the only control which the municipal authorities can exercise over such a corporation, in the use of its franchise, is to prevent the corporation from using its franchise in such manner as will unnecessarily obstruct or otherwise interfere with public travel. A different view is adopted in *Township of Franklin* v. *Nutley Water Co., 53 N. J. Eq. (8 Dick.) 601.* It is unnecessary to here adopt the view first stated; the mere statement of that view by so eminent an authority is sufficient reason for deeming the necessity of municipal consent doubtful. It must, therefore, for the purposes of preliminary relief, be here considered that a water company is empowered by the legislature to lay pipes in highways without the necessity of previous consent, provided the pipes are laid in the manner stated in the statute.

Various infirmities in the incorporation of defendant water company are urged in behalf of complainant. If defendant company is not such a water company as is authorized to exercise the rights already referred to as conferred by our statutes, it would seem to necessarily follow that the statute already referred to can afford no protection to it, even though defendant be a *de facto* water company. In 1897 two water companies were incorporated under the Water Company act (*2 Gen. Stat. p. 2199*), one in Deptford township and one in West Deptford township. Later in that year the two companies were consolidated pursuant to the provisions of *P. L. 1893 p. 121.* Defendant is the consolidated corporation. It is urged that the statute referred to did not authorize a consolidation of these two water companies. I am unable to adopt that view. It is also urged that the Water Company act, as it existed in 1897, was unconstitutional, in that it applied only to municipalities having between five hundred and fifteen thousand inhabitants. On this application for preliminary relief, in a court of first instance, the constitutionality of the act may be assumed. It is also urged that the title to the Water act of 1897 did not include townships in its enumeration of "cities, towns and villages." In *Township of Franklin* v. *Nutley Water Co., 53 N. J. Eq. (8 Dick.) 601, 605,* the word "town," as used in the twelfth section of the act, is held to include townships. I am unable to give the word a narrower significance as used in the title of the act.

I am unable to reach the conclusion that complainant's rights are sufficiently clear to warrant preliminary relief. If the rights of complainant have been invaded, such rights can easily be asserted and established and the wrongs redressed by an action at law.