HEINE'S, INC., complainant-respondent,

*v.*

TRUCK DRIVERS' AND HELPERS' UNION, LOCAL No. 676, et al., defendants-appellants.

[Submitted October term, 1940. Decided April 7th, 1941.]

*Messrs. Heine & Heine (Mr. Norman Heine)*, for the complainant-respondent.

*Mr. Charles A. Cohen* and *Mr. Albert K. Plone,* for the defendants-appellants.

The opinion of the court was delivered by

BROGAN, CHIEF-JUSTICE.

This is an appeal from an order of the Court of Chancery restraining, *pendente lite,* the appellants, Truck Drivers' and Helpers' Union Local 676, and Messrs. O'Neill, Weaver and Glassman, who respectively are secretary, president and business agent of defendant Union, and their agents, servants and employes. The injunctive order restrains (a) picketing, interference with complainant's business, violence, &c.

The complainant operates a retail furniture store at 932 Broadway, Camden, New Jersey. The rear of the store abuts on a street or alley seven or eight feet wide known as St. John street.

The main charge outlined in the bill of complaint has to do with alleged conduct of the Union representatives on the narrow street in the rear of the business property where the complainant, in the operation of its business, loaded its trucks to make deliveries and received merchandise consigned to it, which acts and conduct, if done, would amount to assault by threat. The court evidently accepted as true the statements in the affidavits annexed to the bill, that the individual defendants effectually blocked this narrow right of way at

both ends and threatened those on the scene who were in the employ of the complainant.

The restraint which is the subject of this appeal was preliminary and on *ex parte* proofs which assert that a representative of the Union called upon the president of the complainant company and suggested a closed shop contract embracing the services of a truck-driver, helper, and a warehouseman. Mr. Heine, the president, rejected the proposed contract but told the Union representative that he was free to discuss the matter with the said employes. Upon the refusal of these employes to join the Union, it is said that on the following day the Union representatives arrived and picketed the premises front and rear, carrying signs. While the complainant's affidavits do not state what message was published by the signs carried by the pickets, the counter-affidavits state that the placards read, "This company does not employ any Union help," and this is not denied. It is further alleged in the complainant's affidavits that the truck-driver and his helper were threatened and told to keep off the truck; and that members of the Union parked their cars in narrow St. John street and effectually blocked that right of way in both directions so that vehicles could neither reach nor leave the complainant's premises. It is also said that incoming drivers attempting to make deliveries were subjected to threats with the result that they left without delivering the merchandise; and that a customer of the complainant, on calling for goods he had purchased from the complainant, was afraid to take his purchases away. It should also be mentioned, in passing, that these affidavits contain many conclusions, rather than detailed recitals of fact and circumstance.

Five affidavits are submitted for the defendants—three from the individuals defendant—officers of the Union—two from the pickets—members of the Union. They challenge the charges of the complainant in every substantial detail. These affidavits, when paralleled with the ten moving affidavits, disclose an *impasse* on fact; they make a complete, detailed and categorical denial of all of the material allegations advanced in support of the restraint except the fact of picketing, which is admitted. The deponents assert there

were no threats of violence; that at no time were there more than three pickets in attendance, generally but two, one in front and one in the rear of the premises; that they carried a sign whose legend has already been mentioned; further, that in keeping with instructions from their superior, the picketers spoke to no one except when spoken to; that they did not block the rear street with automobiles; that in fact they had no automobiles either of their own or any one else; and that the automobiles, shown in the photographs included in the state of case, which blocked the narrow rear street, belonged to persons who were strangers to them and with whose street parking they had no connection of any kind.

The learned Vice-Chancellor, in referring to the facts, said that while he recognized that pending final hearing it was not the function of the court in a proceeding of this kind to determine the factual issue on affidavits, nonetheless that the denials of the defendant "do not carry conviction," citing *Evening Times Printing and Publishing Co.* v. *American Newspaper Guild, 124 N. J. Eq. 71.* But this case is not authority for the proposition that the court is empowered to determine between two sets of proof in affidavit form, in conflict in all detail, which should be accepted as fact and which rejected. The general rule (subject to few exceptions, none of which appears here) is that an injunction *pendente lite* will not be awarded where the complainant's affidavits in support of the bill are met by a full, explicit and circumstantial denial under oath. This has long been the law. *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299, 306.* In the *Evening Times Case, supra,* this court found that the affidavits filed by the defendant in that case did not contain explicit, circumstantial and convincing denials. And that the denials, having failed in preciseness and particularity, therefore did not carry conviction. That necessarily was the logic of the matter. If the denials were explicit, detailed and circumstantial; if they were unequivocal and complete in detail, they could not be said, on the mere written word, not to carry conviction. If the court so concluded then the court would be determining the truth on controverted issues which the court may not do on affidavits and

counter-affidavits. It was the absence of those qualities in the defense proofs in the cited case that justified this court in concluding that the denials did not carry conviction. The defendants' proofs in the instant issue are not enfeebled by any such vice or weakness as that found to be present in the *Evening Times Case.* We think that the affidavits fully and fairly met every charge of violence, threat or molestation outlined in the affidavits filed in support of the bill. These were precise and detailed; unqualified and discursive. In our judgment the denials did not lack conviction and in this state of affairs—proof and counter-proof by affidavits—the court was powerless, on preliminary argument, to determine the fact issue. That must wait final hearing. Under the circumstances a preliminary injunction should not have been granted. *Cf. Kitty Kelly Shoe Co.* v. *United Retail Employes, &c., Local 108, 126 N. J. Eq. 318.*

One further point was made by the defendants. Relying on *Thornhill* v. *Alabama, 310 U. S. 88,* and *Carlson* v. *California, 310 U. S. 106,* they contended that their activities, unaccompanied by violence, were an exercise of their right of freedom of speech and of the press guaranteed to the individual by our federal constitution and secured to him against invasion by state statute by the Fourteenth Amendment thereto. As to this the Vice-Chancellor held these cases were not controlling for the reason that both were concerned with "penal legislation," in the former case a statute of the State of Alabama, and in the latter an ordinance of Shasta county, California, which prohibited picketing generally. But assuredly the federal Supreme Court passed upon the principle which is the underlying question here. And these cited cases hold that a statute or an ordinance which prohibited picketing *as such* was unconstitutional. If these rights therefore may not be inveighed by state or local law, it is not open to debate but that *as such* they are immune from the ban of injunction. It is needless to undertake any further restatement of the doctrines and principles enumerated by the cases just cited. Of equal importance in the exposition of the controlling legal philosophy on these fundamental questions are the more recent decisions of our United States Supreme

Court in *Milk Wagon Drivers Union, &c.,* v. *Meadowmoor Dairies, 61 Sup. Ct. Rep. 552,* and *A. F. of L. et al.* v. *Swing et al., 61 Sup. Ct. Rep. 568,* which had not been decided when the Vice-Chancellor considered the instant case. Nor shall we attempt to paraphrase these holdings except to say that in the first case, by a divided vote, a majority of the judges in the United States Supreme Court held that state courts may "enjoin acts of picketing in themselves peaceful when they are enmeshed with contemporaneously violent conduct which is concededly outlawed;" in the second case a majority of the same court reversed an injunction decree which banned picketing of an establishment where, as here, there was no dispute between the management and its immediate employes and the picketing was done by non-employes who were members of a particular union. It follows then that the proposition often referred to as the "no strike, no picketing" rule no longer has any efficacy. *Cf. E. L. Kerns Co.* v. *Landgraf, 128 N. J. Eq. 441.*

Reverting to the case before us, and considering what has been said, our view is that the charges of violence in this case, supported by moving affidavits, have been neutralized by answering affidavits of equal quality which render the application for preliminary injunction indeterminable until after final hearing.

The order should be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.