Application is made for a preliminary injunction.
Complainant, Cascade Laundry, Inc., has been engaged in the general laundry business in Gloucester and Camden counties since August 4th, 1922; its place of business is at Woodbury, New Jersey. The defendants William J. Volk, Richard P. Volk, Jacob J. Wekerle, Raymond B. Seedes and Herman C. Bock, were formerly employed by complainant as routemen, soliciting business of customers and making deliveries.
The bill alleges that these defendants, together with the defendant Klean Way Laundry are now engaged in pirating complainant's customers. The individual defendants, at the time they were employed by complainant, each signed a negative covenant agreeing that, for a period of six months after the termination of their employment, they would not, directly or indirectly, by visitation or otherwise, solicit or seek to influence any person for whom complainant may have theretofore done laundry work, nor any person at any address at which complainant may have theretofore delivered laundry work, nor accompany anyone to such person or to such address for the purpose of diverting such customer or business from complainant to themselves or to any other laundry; they further agreed that they would not deliver or assist in delivering laundry work to any such customer, or receive or assist in receiving goods to be laundered, or orders therefor. They have not worked for complainant since March 24th, 1941. It is the allegation of the bill of complaint that these former routemen are conspiring together in an attempt to divert patronage of complainant's customers to themselves, that they have obtained delivery trucks, have been calling upon and servicing complainant's former customers, and that their laundry work is being done for them by the defendant Klean Way Laundry. Further, it is alleged that the latter defendant was notified on April 14th, 1941, of the existence of the negative covenants and the covenants themselves were exhibited to Harry Van Deusen, one of the parties in interest in the Klean Way Laundry.
The allegations of the bill of complaint were verified in a number of affidavits attached to the bill. When the bill was *Page 605 
presented to me and filed in this court, application was made forad interim restraint which was refused. An order to show cause was allowed; defendants, replying, filed numerous affidavits.
Complainant's bill and attached affidavits did not frankly and fully disclose the true situation. In its bill and the affidavits, it did not advise the court that a strike had been declared by its employes on March 24th, 1941, after attempted negotiations with complainant had failed of results, and had continued for a month. Defendants' affidavits developed this fact and, on argument, it was admitted by complainant. In its bill, complainant merely stated "that its business was conducted normally until Monday morning, March 24th, 1941, when its employes did not report for work * * *;" and "that it has refrained from hiring any substitute employes since March 24th, 1941, because of its intention to keep open the jobs of the regular employes in order to give them an opportunity of voluntarily returning to work." By way of anticipation, it added, that if reliance was had by defendants on chapter 15, of the laws of 1941, R.S. Cum. Supp. 2:29-77.1 et seq., it "shows that no relief is sought in these proceedings by it in connection with any labor dispute and that any facts in connection with the alleged unionization of complainant's employes by International Laundryworkers Union, Local No. 10, or Truck Drivers and Helpers Local No. 676 are immaterial in these proceedings and that the sole and exclusive object of complainant herein is to enforce its right under and pursuant to its contracts with the individual defendants herein and to enforce the obligations of said defendants owing to it."
Inadvertently perhaps, in detailing challenged acts of routeman Herman C. Bock, the complainant said: "He also stated that he was satisfied with complainant and did not want to strike but had to." This is the only mention in the bill of complaint, or in the attached affidavits, of the strike which had been in progress almost exactly one month when it was filed with me. Complainant would, self-evidently, have had this court accept and pass upon this matter as if it were, in fact, a simple case of a violation of negative covenants and a pirating of complainant's customers. *Page 606 
The legislature of this state, by the act approved March 13th, 1941, declared a revised public policy with regard to injunctive relief in controversies involving or growing out of a labor dispute or the respective interests of employer and employe and our court of last resort has recently adopted the rules applying to labor disputes declared by the Supreme Court of the United States. Heine's, Inc., v. Truck Drivers' and Helpers' Union,Local No. 676, 129 N.J. Eq. 308. Complainant was, of course, familiar with this situation; it specifically declared in its bill that no relief was sought by it in connection with any labor dispute. Unquestionably, chapter 15 of the laws of 1941 does apply to the instant situation, and complainant might well be denied the relief it presently seeks solely because of the facts and circumstances just recited. In Endicott v. Mathis, 9 N.J. Eq. 110,
Chancellor Williamson declared that an injunction should not be continued where obtained on a misrepresentation of facts and that it did not alter the case that the misrepresentations might have been made through inadvertence or misinformation.
In 1 Pom. Eq. Jur. (3d ed.) 398, appears the following: "While a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies." In the opinion, Com. v.Filiatreau, 161 Ky. 434, 438; 170 S.W. Rep. 1182, the following succinct and pertinent statement is made:
"The maxim is broad enough to demand that he who prays from the Chancellor protection as well as he who seeks affirmative aid, must openly and frankly, without reservation or evasion, yield to the Chancellor that full measure of confidence and truth which is prerequisite to the assertion and exercise of Chancery powers, and the lack of which must necessarily repel him from a forum whose very foundation is mutual confidence and good faith."
See, also, Endicott v. Mathis, supra; Leigh v. Clark,11 N.J. Eq. 110; Camden Iron Works v. Camden, 64 N.J. Eq. 723 (atp. 733); 52 Atl. Rep. 477. *Page 607 
The legislature of New Jersey, whether wisely or unwisely, so phrased this act as to make it include such a controversy as I now know exists, involving complainant and its business. R.S.2:29-73.3 declares: "No court of the State of New Jersey, nor any judge or judges thereof, shall issue a temporary or permanent injunction in any case involving or growing out of a labordispute as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a bill of complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of all the following facts by the court or judge or judges thereof:." (Italics mine.) R.S. 2:29-77.5 repeats the phrase "involving or growing out of a labor dispute." R.S.2:29-77.8 defines the term "labor dispute:" "(c). The term`labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any othercontroversy arising out of the respective interests of employerand employe, regardless of whether or not the disputants standingin the proximate relation of employer and employe." (Italics mine.)
There surely can be no doubt that the present controversy between complainant and its former routemen has arisen out of their interests as employer and employe. The covenant was conceived to protect the interest of the employer; the employe, as a prerequisite to employment, signed it. The strike involves the respective interests of employer and employe; complainant charges that its customers are being taken from it by those who, as employes, were trusted to keep them for it while these defendants claim they are servicing these customers during the strike to earn a living, but, also, to hold them for complainant until such time as the strike shall have been terminated. If the relationship of employer and employe had not been created there would have been no necessity for a covenant and if there had been no strike the present alleged breach of the covenant would not be before *Page 608 
this court. "On this application for preliminary relief, in a court of first instance, the constitutionality of the act may be assumed." Vice-Chancellor Leaming, in Gloucester Turnpike Co.
v. American Pipe Co., 77 N.J. Eq. 471. Complainant has not presented to this court a case under which, having regard to the provisions and inhibitions of this act of the legislature, a temporary injunction may be granted.
Still other reasons exist sufficient to justify a refusal of relief. Complainant, in its bill, admits that it has not carried on any business whatever since March 24th, 1941. When it ceased business it recommended to its customers "that they have their laundry work done by other representative laundries in the general trading area in which complainant is located," and it advertised that it was temporarily unable to serve customers. The defendant Klean Way Laundry is a laundry doing business in the trading area.
Complainant waited one month before instituting this cause. In its bill of complaint it admits and alleges that many of its customers, claimed to have been solicited by or to be dealing with the individual defendants, will voluntarily patronize it again when it resumes business and that certain of the individual defendants have declared that, upon an adjustment of the differences between employer and employe and a reopening of complainant's plant, they will return to work for the complainant. All of the defendants, in their affidavits, insist that they are only soliciting laundry business in order to provide for themselves and their families while the strike continues and that, upon termination of the strike, they will return to their former employment and solicit business only for complainant.
Defendants declare also in their affidavits that complainant has failed and refuses to recognize and deal with labor unions chosen by its employes as their representatives. The National Labor Relations act, 48 U.S. Statutes 449 § 8 subdiv. 5, declares that it shall be an unfair labor practice for an employer to refuse to bargain collectively. In Delaware-NewJersey Ferry Co. v. United States Marine Division, Local No.333, International Longshoremen's Association, c., Vice-Chancellor Sooy, in an unreported opinion (docket 129-421), *Page 609 
refused to grant a preliminary restraint against picketing and commented on the refusal of complainant's general manager to recognize the union. The Vice-Chancellor pointed out that the complainant had not been fair and frank with the court and that the situation might have been entirely different if complainant had not refused to confer with union representatives.
Defendants specifically deny that they are guilty of pirating or of attempting to steal complainant's business. They allege that complainant has had no business since March 24th, 1941, and that complainant stated and advertised that its customers should temporarily deal with other laundries. They maintain that while earning a living for themselves, they are holding complainant's customers to be returned to complainant when the strike is ended and they resume work. This situation, developed by the statements of the bill of complaint, its accompanying affidavits, and the detailed affidavits of the defendants, is persuasive that relief should be denied until final hearing. It is entirely settled that a preliminary injunction will never be ordered unless from the pressure of urgent necessity. The damage threatened to be done, and which it is legitimate to prevent, during the pendency of the suit, must be, in an equitable point of view, of an irreparable character. And, where the facts constituting the claim of the complainant for an immediate interposition of the court are controverted, under oath, by the defendants, the court should not interfere at the initial stage of the cause. Citizens Coach Co.
v. Camden Horse Railroad Co., 29 N.J. Eq. 299.
The order to show cause will be discharged, costs to abide the result of final hearing. *Page 610